# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED
5/13/2022
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY   vyc   DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No.  22MJ8332
One (1) Red iPhone 12 )
Model# MGHE3LL/A )
IMEI: 357504271747545 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 and 846 | Possession of a Controlled Substance With Intent to Distribute; Conspiracy to Commit Same |

The application is based on these facts:
See Attached Affidavit of Drug Enforcement Administration Special Agent Richard Rodriguez, incorporated herein by reference.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

RICHARD RODRIGUEZ   *Digitally signed by RICHARD RODRIGUEZ Date: 2022.05.12 13:57:26 -07'00'*

*Applicant's signature*

Special Agent Richard Rodriguez, DEA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:   05/13/2022

*Judge's signature*

City and state:  San Diego, California       HON. ANDREW G. SCHOPLER, US MAGISTRATE J.
*Printed name and title*

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

> One (1) Red iPhone 12
> Model# MGHE3LL/A
> IMEI: 357504271747545
> ("Target Device #1")





The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

# ATTACHMENT B

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below.  The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 24, 2022, up to and including March 24, 2022.

a. tending to indicate efforts to transport and distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of methamphetamine, or some other federally controlled substance, within the United States and destinations beyond;

d. tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.

# AFFIDAVIT

I, Special Agent Richard Rodruguez, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> One (1) Red iPhone 12
> Model# MGHE3LL/A
> IMEI: 357504271747545
> ("Target Device #1")

> One (1) Black Nokia Cellular Telephone
> Model # Unknown
> IMEI: 354773220791887
> ("Target Device #2") (collectively "Target Devices")

as further described in Attachment A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 841 and 846 as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Christian Robert CASTILLO ("CASTILLO" or "Defendant") and Daniel Alexander RODRIGUEZ ("RODRIGUEZ" or "Defendant") (collectively "Defendants") for possession with intent to distribute approximately 10.15 kilograms (22.37 pounds) of methamphetamine, 1.008 kilograms (2.22 pounds) of heroin and 1.828 kilograms (4.03 pounds) of fentanyl. The Target Devices are currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I am Special Agent with the Department of Justice, specifically the Drug Enforcement Administration, and have been so employed since September 2021. I am currently assigned to the Imperial County District Office (ICDO), San Diego Field Division (SDFD), Enforcement Group 51 in Imperial, California. Upon being hired as a DEA Special Agent, I attended a 16-week DEA academy in Quantico, Virginia, where I received training in all aspects of controlled substance investigations, including, but not limited to, the enforcement of drug laws, investigation of drug trafficking, drug recognition and terminology, case management, undercover operations, interviewing techniques, the gathering of evidence, preservation of a crime scene, and the use of electronic surveillance. In connection with my official DEA duties, I investigate criminal violations of federal drug laws and related offenses, including violations of Title 21, United States Code, 801 et seq. and the Federal Controlled Substance Act. I have received training, both formal and informal.

4. During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who possess narcotics with the intent to distribute.

5. I am aware that it is common practice for drug traffickers to work in concert utilizing cellular telephones to maintain and store communications and related items with co-conspirators in order to further their criminal activities. A common tactic utilized by narcotics traffickers is to transport controlled substances within the United States by concealing the controlled substances in vehicles that travel within the United States, specifically, within Imperial County prior to distribution of the controlled substances. With respect to the transportation and distribution of drugs in this manner, I am aware that drug

traffickers in Mexico and the United States frequently communicate with the individuals responsible for transporting and distributing the controlled substances within the United States. These communications can occur before, during and after the drugs are transported and distributed within the United States. For example, prior to the transportation, drug traffickers frequently communicate with the driver regarding arrangements and preparation for the drug transportation. When the transportation is underway, drug traffickers frequently communicate with the driver to remotely monitor the progress of the drugs, provide instructions to the driver and warn accomplices about law enforcement activity. When the drugs have been transported further into the United States, drug traffickers may communicate with the courier or driver to provide further instructions regarding the transportation of the drugs for distribution within the United States.

6. Based upon my training, experience, and consultations with law enforcement officers experienced in controlled substance investigations, and all the facts and opinions set forth in this affidavit, I am aware that conspiracies involving distribution of controlled substances generate many types of evidence including, but not limited to, cellular phone and computer-related evidence such as voicemail messages referring to the arrangements of payment, names and contact information for co-conspirators, photographs, text messages, emails, messages from text messaging applications such as WhatsApp, Text Now, social networking messages, and videos reflecting co-conspirators or illegal activity. I am also aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7. On March 23, 2022, United States Border Patrol Agent (BPA) Matthew Buckner was assigned to the California Highway 78 Checkpoint near Palo Verde, California. At approximately 3:30 p.m., BPA Buckner was conducting primary inspection duties and observed a red Toyota Corolla (Toyota) with two visible occupants approaching the checkpoint. BPA Buckner had received a lookout earlier in the day regarding a red Toyota possibly headed to the checkpoint suspected of smuggling narcotics.

8. Once the Toyota approached primary, BPA Buckner identified himself as a United States Border Patrol Agent and asked the driver, later identified as Christian Robert CASTILLO (CASTILLO), if he was a United States citizen, to which he replied in the affirmative. BPA Buckner then asked the passenger, later identified as Daniel Alexander RODRIGUEZ (RODRIGUEZ), if he was a United States citizen, to which he also replied in the affirmative. BPA Buckner smelled marijuana odors emanating from within the

Toyota. BPA Buckner then directed CASTILLO to move the Toyota to secondary inspection for further investigation.

9. Once the Toyota was in secondary, BPA Buckner directed CASTILLO to turn the Toyota off and CASTILLO complied. BPA Buckner then asked CASTILLO to get out of the Toyota, to which CASTILLO complied. BPA Buckner then asked RODRIGUEZ to exit the Toyota, to which RODRIGUEZ complied. BPA Buckner then asked CASTILLO for consent to search the entire Toyota. CASTILLO then replied: "Yeah, go ahead." BPA Buckner's search of the Toyota revealed a backpack in the trunk full of packages wrapped in black tape suspected of containing contraband. One of the substances within these packages later tested positive for the characteristics of methamphetamine. A second substance later tested positive for the characteristics of heroin with a weight of 1.008 kilograms (2.22 pounds). Within the packages of contraband, Agents also discovered numerous bags of blue pills marked "M-30." Agents are aware, based on their training and experience, the pills contained the same color and marking characteristics as fentanyl pills discovered during other narcotics seizures. The suspected fentanyl packages had a weight of 1.828 kilograms (4.03 pounds). BPA Buckner also found a white trash bag in the trunk with clear packages that later tested positive for the characteristics of methamphetamine and the methamphetamine had a total weight of with a weight of 10.15 kilograms (22.37 pounds).

10. Both CASTILLO and RODRIGUEZ were detained at the checkpoint. Agents from the DEA were notified by United States Border Patrol (USBP) and subsequently responded to the USBP Highway 78 Checkpoint. DEA Agents then took custody of CASTILLO, RODRIGUEZ, the Toyota, and the narcotics. CASTILLO and RODRIGUEZ were advised of their Miranda rights.

11. CASTILLO acknowledged his rights and agreed to speak with agents without the presence of an attorney. During the subsequent interview, CASTILLO claimed RODRIGUEZ was going to pay CASTILLO $200 United States Dollars for driving RODRIGUEZ to Brawley, California for business purposes. CASTILLO declined any

knowledge regarding contraband being present within the Toyota that CASTILLO was driving.

12. RODRIGUEZ acknowledged his rights and agreed to speak with agents without the presence of an attorney. During the subsequent interview, RODRIGUEZ claimed that CASTILLO was to drive RODRIGUEZ to Brawley, California to seek work. RODRIGUEZ declined any knowledge of contraband being present in the Toyota in which RODRIGUEZ was the passenger.

13. CASTILLO and RODRIGUEZ were placed under arrest and charged with a violation of Title 21 U.S.C. § 841(a)(1) for Possession of a Controlled Substance with Intent to Distribute and were booked into GEO El Centro detention facility to await initial appearance. Border Patrol Agents discovered Target Device #1 with CASTILLO's personal property at the time of his arrest. Border Patrol Agents discovered Target Device #2 with RODRIGUEZ's personal property at the time of his arrest. The Target Devices were seized as evidence.

14. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices. In light of the above facts and my experience and training, there is probable cause to believe that Defendants were using the Target Devices to communicate with others to purchase illicit narcotics. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as Defendants, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer

than they claim. Accordingly, I request permission to search the Target Devices for data beginning on February 24, 2022, up to and including March 24, 2022, the day after the arrest of CASTILLO and RODRIGUEZ.

## METHODOLOGY

15.  It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.  With regard to electronic storage devices, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including tools to identify data subject to seizure pursuant to this warrant, and to exclude certain data from analysis, such as known operating system and application files. The identification and extraction process, accordingly, may take weeks or months. The

personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date this warrant is signed, absent further application to this court. Moreover, all forensic analysis of the imaged data will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Following the issuance of this warrant, I will collect the Target Devices and subject them to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

18. Law enforcement has not previously attempted to obtain the evidence sought by this warrant. Consent was not given.

//
//
//
//
//
//
//
//
//
//
//

# CONCLUSION

19. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Devices will yield evidence of Defendants' violations of Title 21, United States Code, Sections 841 and 846. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the items described in Attachment A-1 and A-2 and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

RICHARD RODRIGUEZ
Digitally signed by RICHARD RODRIGUEZ
Date: 2022.05.12 13:56:50 -07'00'

Special Agent Richard Rodriguez
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 13th day of May, 2022.

HON. ANDREW G. SCHOPLER
UNITED STATES MAGISTRATE JUDGE

9

# ATTACHMENT A-1

PROPERTY TO BE SEARCHED

The following property is to be searched:

>One (1) Red iPhone 12
>
>Model# MGHE3LL/A
>
>IMEI: 357504271747545
>
>("Target Device #1")

  

The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

# ATTACHMENT A-2

## PROPERTY TO BE SEARCHED

The following property is to be searched:

>One (1) Black Nokia Cellular Telephone
>Model # Unknown
>IMEI: 354773220791887
>("Target Device #2")




The Target Device is currently in the custody of Drug Enforcement Administration and located at 2425 La Brucherie Road, Imperial, California 92251.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 and A-2 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone and electronic storage devices for evidence described below. The seizure and search of the cellular telephone and electronic storage devices shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone and electronic storage devices will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 24, 2022, up to and including March 24, 2022.

a. tending to indicate efforts to transport and distribute controlled substances within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation and distribution of controlled substances within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in distribution of methamphetamine, or some other federally controlled substance, within the United States and destinations beyond;

d. tending to identify travel to or presence at locations involved in the transportation and distribution of controlled substances within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841 and 846.